IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID AND DONNA SCHELL, HOWARD
PICKENS, AND RON OLIVER,
Individually, and as Representative Parties on
Behalf of a Class of Surface Owners,

　　　　　　　Plaintiffs,


　　　　　　vs.　　　　　　　　　　　Case No. 07-1258-JTM


OXY USA, Inc.,
　　　　　　　Defendant.


MEMORANDUM AND ORDER

　　　　This matter comes for hearing on plaintiffs' motion for class certification (Dkt. No. 37).

The court heard oral argument on July 9, 2009, where it took the matter under advisement.  For

the reasons detailed below, the court grants the motion.

## I.  Background Facts

　　　　For the purposes of ruling on plaintiffs' motion, the court accepts as true the following

facts.  Defendant OXY is an international oil and gas exploration and production company that

entered into leases with the plaintiffs.  The named plaintiffs in this case either use free gas or

own property with a free gas connection.  Specifically, plaintiffs David and Donna Schell own

the surface estate of a house and use house gas.  Mrs. Schell additionally owns a one-fourth

mineral interest subject to a life estate in her stepmother.  Mrs. Schell's stepmother currently

receives the royalty interest.  Plaintiff Howard Pickens owns the surface estate of a property that

he rents to a tenant who uses house gas.  Mr. Pickens also owns the surface estate and one-half

of the mineral interest of a separate rental property.  Plaintiff Ronald Oliver owns the surface estate and one-half of the mineral estate where his home, which uses house gas, is located.

For a number of years, OXY sent letters to free gas users in Kansas advising them of issues associated with the use of free gas.  In 2007, users of free gas were advised that their gas contained high concentrations of hydrogen sulfate ($H_2S$), which is extremely dangerous and potentially hazardous to humans.  Separate letters were sent to users of free gas when declining gas pressure threatened to interrupt gas supply.  Even though the letters were different, each essentially stated that the free gas could be in jeopardy.

The named plaintiffs in this case either use free gas or own property with a free gas connection.  Each named plaintiff received at least one letter from OXY advising of either general dangers associated with the use of free gas or the potential for declining pressure to interrupt gas service.  Although each named plaintiff owns property that uses free gas, plaintiffs seek certification of a class of all surface owners of land in Kansas with a lease containing a free gas clause.

Plaintiffs argue that the only issue in this case is whether the surface owner or the lessee has the implied duty to make the gas useable for house gas use under the oil and gas lease.  OXY responds that plaintiffs' characterization of the "issue" incorrectly presumes that all current leases are silent on the issue and can be treated and interpreted the same.  OXY argues that many leases expressly impose upon the free gas user all expenses and risks associated with the use of free gas.  Further, OXY claims that the required interpretation of the different leases precludes a generalized inquiry to plaintiffs' sole "issue."  OXY argues that plaintiffs' motion should be denied because they cannot meet their burden, and that their request would require the court to

2

ignore the language of the individual leases, contract interpretation rules, statute of limitation

issues, the divergent interests between royalty owners and surface interest owners, and numerous

statutory prerequisites for class certification.

## II.  Legal Standard for Class Certification

Federal Rule of Civil Procedure 23 sets forth the standards for certifying a class action,

and requires that all four prerequisites of Rule 23(a) and at least one of the three requirements of

Rule 23(b) are satisfied.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Integra*

*Realty Res., Inc.,* 354 F.3d 1246, 1262 (10th Cir. 2004).  The trial court has broad discretion in

determining whether to certify a class.  *Rector v. City & County of Denver*, 348 F.3d 935, 949

(10th Cir. 2003).  The trial court must perform a rigorous analysis of whether the proposed class

satisfies the requirements of Rule 23.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982).  The

court should accept the allegations in the complaint as true, although it "need not blindly rely on

conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and

factual issues presented by plaintiff's complaints."  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280,

1290 n. 7 (10th Cir. 1999).  Further, the court is to "remain focused on the requirements of Rule

23 rather than looking at the merits underlying the class claim."  *In re Urethane Antitrust*

*Litigation*, No. 04-1616, 2008 WL 4210780, at *2 (D. Kan. July 28, 2008) (citing *Shook v. El*

*Paso County*, 386 F.3d 963, 971 (10th Cir. 2004)).

## III.  Analysis

Plaintiffs seek Rule 23 class certification, and seek status as class representatives. Defendant objects and claims that plaintiffs have failed to satisfy the requirements of the rule.

Plaintiffs describe the proposed class as follows:

> All surface owners of Kansas land burdened by oil and gas leases owned or operated by OXY USA, Inc. which contain a free gas clause.

### 1. Rule 23 Requirements

Rule 23(a) requires a party to demonstrate that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If those requirements are met, the court "must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988). In this case, plaintiffs claim certification is warranted under either Rule 23(b)(2) or Rule 23(b)(3).

### A. Numerosity

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members would be impracticable. To satisfy this requirement, the plaintiffs need to show that the joinder of all parties is impracticable, although they need not show that it would be impossible. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). This is a fact specific inquiry, and there is no set formula for determining if the class is so numerous that it should be certified. *Id.* Further, numerosity and practicability of joinder are not determined simply by the number of potential class members, but instead depend on factors such as location and distribution of class members,

4

and the practical viability of individual suits.  *Commander Props Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995).

Here, plaintiffs argue that there are at least 312 class members, which they claim meets the numerosity requirement.  Plaintiffs claim that they meet the "normal rule" that a class of 40 is sufficient; however, the Tenth Circuit has "no set formula to determine if the class is so numerous that it should be certified."  *Rex v. Owens ex rel State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).  Defendants claim that plaintiffs fail to explain why or how joinder would be impractical.  Nonetheless, the sheer number of plaintiffs tends to lend itself to a class action, and thus the numerosity requirement is satisfied.

## B.  Commonality

Rule 23(a)(2) requires some question of law or fact common to the class.  To meet this requirement, members of a putative class must "possess the same interest and suffer the same injury."  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  The threshold for commonality is not high, and does not require that class members share every factual and legal predicate.  *Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607 (D. Kan. 2008).

Plaintiffs argue that all class members have the same legal issue: Is OXY legally responsible to make the gas useable under the lease?  OXY argues that the very nature of plaintiffs' claims necessitate an individualized evaluation for all the different leases, as well as the statute of limitations issues.

 The court is not swayed by defendant's arguments.  The sole issue in this case deals with the duty to make the gas useable, which is common to all the potential class members.  As such, commonality is met.

5

### C.  Typicality

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class."  A class representative must possess the same interest and suffer the same injury as the class members.  *Thompson*, 250 F.R.D. at 610. Typicality determines whether a sufficient nexus exists between the claims of the named plaintiffs and the class.  *Id.*  Claims need not be identical to be typical.  *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 160 (D. Kan. 1996).  "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988).

Plaintiffs argue that "putting gas in useable condition would be common and typical." (Dkt. No. 38 p. 21).  OXY counters that numerous typicality hurdles preclude certification. First, OXY claims that plaintiffs' imprecise class definition poses problems because all of the named plaintiffs currently use free gas or own rental property with free gas connections, while the proposed class includes individuals not requesting free gas, who did not receive any letter from OXY about free gas.  OXY points out that whether an individual who has never used free gas can even claim an injury has not been addressed, and further argue that such an individual with no claimed injury and no current intent to use free gas does not have the same injury as the named plaintiffs.

Further, OXY argues that even if plaintiffs attempted to redefine or limit their class to those who use free gas, plaintiffs still could not satisfy the typicality requirement because at least three separate issues are presented for this group because of the three different letters sent out by OXY: (1) low pressure letters, which informed the individual that their gas supply was not

assured; (2) high level of dangerous $H_2S$ in their gas, which did not indicate a low gas supply but instead warned that the continued use of such gas could pose certain dangers, including death; and (3) general letters, which referred to risks associated with the general use of gas.  OXY argues that plaintiffs incorrectly ask the Court to group all three types of letters and the myriad ensuing issues into one, and fail to recognize the different situations present.  For example, the concerns of individuals confronting a low gas supply and interrupted service differ from the concerns of those with a gas supply that contains high levels of $H_2S$, which is wholly separate from general letters that advised users about the general risks of using gas and the existence of $H_2S$.

OXY's arguments are not convincing.  Although there are different issues associated with the possible disruption of the free gas use, the overarching issue remains the same for all class members: who has the duty to make the gas useable?  Further, although there are different leases involved, it appears that the house gas clause common in the leases would have been part of the consideration for the contract, and thus an integral part of each lease, that is both common and typical to all class members.  Because plaintiffs each face the same issue as all possible class members, typicality is met.

### D.  Adequacy of Representation

Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class.  To satisfy this requirement, the plaintiffs must show that their interests are aligned with those of the persons they seek to represent, and that they will vigorously prosecute the case through qualified counsel.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Plaintiffs argue that they will adequately represent the class because they have no positions antagonistic to the class, and that class counsel is qualified.  OXY does not challenge the adequacy of class counsel, but does claim that certain inherent conflicts of interest preclude class certification.  In short, OXY claims that some royalty owners do not use free gas, and would want to enhance production to maximize the royalty, which is in direct conflict with the free gas users.  Further, OXY argues that even if plaintiffs redefine the class by limiting it to current users of free gas, the conflict remains.

As articulated by plaintiffs' counsel at oral argument, the only possible conflict of interest between a royalty owner and a free gas user would be with OXY.  A royalty owner and a free gas user both benefit from the situation presented, whereas OXY would benefit more from merely paying royalties as opposed to providing free gas.  Accordingly, adequacy of representation is met.  As such, plaintiffs have met all four Rule 23(a) requirements.

### E.  Rule 23(b)

In addition to meeting all four of the Rule 23(a) prerequisites, a plaintiff must also meet one of the Rule 23(b) requirements.  Plaintiffs propose that the Court certify a class under either Rule 23(b)(2) or 23(b)(3).

<u>1. Rule 23(b)(3)</u>

To certify a class under Rule 23(b)(3), the court must find that common questions "predominate over questions affecting only individual members" and that the class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  To determine whether the question is common or individual, the nature of the evidence must be examined.  *In re Urethane Antitrust Litigation*, No. 04-1616, 2008 WL 4210780, at *5 (D. Kan. July 28, 2008). "If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question.  If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question." *Id.* (internal citations omitted).

Plaintiffs argue that the only issue in this case is a legal one and that predominance is met because liability will be proven by common evidence, not by the testimony of class members. OXY claims that an individualized inquiry is necessary for both each lease involved, as well as the statute of limitations issues.  OXY argues that this case involves approximately 2,000 leases with several different variations of the "free gas clause" and that grouping all of those leases together in one class action would be inappropriate.  Further, OXY argues that courts have repeatedly held that the breach of individual contracts rarely present situations appropriate for class certification. *Pueblo of Zuni v. U.S.*, 243 F.R.D. 436, 446-47 (D. New Mex. 2007) (noting

that the "breach of individually negotiated contracts with different terms at different times by a corporate defendant, would pose a situation totally unlike that of the paradigmatic class action suit").

OXY also claims that this case is distinguishable from other royalty owner cases where class actions were deemed appropriate because the proposed class here deals with several different situations (low pressure, $H_2S$ levels, etc), and that each royalty owner has a different lease that must be interpreted.  OXY also argues that class action is not the superior method for resolving this dispute, and argues that joinder or separate lawsuits are not precluded.

OXY also raises the statute of limitations defense, which raises individualized issues. OXY claims that some named plaintiffs stated that they began to notice "significant problems" as early as 1998 or 1999.  OXY argues that Kansas' two-year statute of limitations precludes class certification because it presents individualized issues for evaluation by the Court. Plaintiffs respond that the statute of limitations issue has no bearing on the critical legal issue of who has the implied duty to place the gas in useable condition.

Despite all of OXY's arguments, the only issue to be resolved is simply to determine who has the responsibility of making the gas useable.  Because that issue predominates, class certification is proper.

Finally, plaintiffs must show that a class action is the superior method for resolving the claim.  Given the large number of potential class members and the commonality of the claims, a class action is the superior method of resolution.

10

## 2.  Rule 23(b)(2)

Rule 23(b)(2) applies to injunctive relief:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Rule 23(b)(2) imposes two independent but related requirements: (1) "the defendants' actions or inactions must be based on grounds generally applicable to all class members;" and (2) "final injunctive relief be appropriate for the class as a whole."  *Shook v. Bd. of County Comm'rs*, 543 F.3d 397, 604 (10th Cir. 2008).  The second requirement is more restrictive and "demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."  *Id.* (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)).

Plaintiffs ask the court to: (1) enter a declaratory judgment that the lessee has the implied duty to place the house gas in useable condition; and (2) enjoin OXY from threatening gas users about the quality of gas.  Further, plaintiffs state that they will give class notice.

OXY asserts that plaintiffs fail to develop or support their request for Rule 23(b)(2) certification.  Further, OXY claims that the complaint addresses only issues associated with low pressure, and completely ignores the $H_2S$.  Additionally, OXY argues that plaintiffs cannot meet the cohesiveness required in that its defined class includes individuals who do not use house gas and who have never requested house gas.  Additionally, OXY claims that class certification should be denied when the primary relief sought is monetary.

11

Because this court renders class certification proper pursuant to Rule 23(b)(3), it need not reach the merits of the Rule 23(b)(2) claim for certification.

### IV.  Conclusion

Plaintiffs have met the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) regarding their claims.  Therefore, this court certifies a class defined as all surface owners of Kansas land burdened by oil and gas leases held or operated by OXY USA, Inc. which contain a free gas clause.  Additionally, David and Donna Schell, Howard Pickens, and Ron Oliver are to be the class representatives, and plaintiffs' counsel are to act as class counsel in this matter.  *See* Fed. R. Civ. P. 23(c)(2)(B).

IT IS ACCORDINGLY ORDERED this 29th day of July, 2009, plaintiffs' motion to certify class under Rule 23 (Dkt. No. 37) is granted.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE