IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D<span>AVID AND</span> D<span>ONNA</span> S<span>CHELL,</span> AND
R<span>ON</span> O<span>LIVER,</span> INDIVIDUALLY, AND
AS REPRESENTATIVE PARTIES ON
BEHALF OF SURFACE OWNERS,

    Plaintiffs,

v.              Case No. 07-1258-JTM

O<span>XY</span> USA I<span>NC.,</span>

    Defendants.

MEMORANDUM AND ORDER

On March 26, 2013, the court granted summary judgment to the plaintiffs in this contest over who owed the duty to make free gas useable under the contracts at issue. Dkt. 155. On September 11, 2013, the court held that its judgment applied to the entire plaintiff class, not just the individual plaintiffs. Dkt. 191. Having decided these issues, the court now has before it the plaintiffs' Motion for Attorneys' Fees and Nontaxable Expenses (Dkt. 160) and Motion for Approval of Second Class Notice (Dkt. 163). The court is prepared to rule.

**Motion for Attorneys' Fees and Nontaxable Expenses**

**A. Attorneys' Fees**

The plaintiffs seek attorneys' fees of $2 million, nontaxable expenses of $4,790.50, and incentive awards of $120,000 in total. They estimate the value of the outcome of the litigation at over $30 million and argue that their requested fees, expenses and incentive awards are reasonable in light of this valuation.

Under Section 2 of the Declaratory Judgment Act, codified at 28 U.S.C. § 2202, the district court has broad authority to grant "further necessary or proper relief based on a declaratory judgment . . . after reasonable notice and hearing, against any adverse party whose rights have been determined by the judgment." *Gant v. Grand Lodge of Texas*, 12 F.3d 998, 1002 (10th Cir. 1993). "Necessary or proper relief" may include attorneys' fees. *Id.* at 1002–03.

"[T]he standard for an award [pursuant to § 2202] is no lower than for general civil litigation under the American rule." *Jones v. Cole*, No. 08-1011-JTM, 2011 WL 1375685, at *4 (D. Kan. April 12, 2011) (internal citation omitted). "That is, the scope for any attorney fee award, even under § 2202 'is drawn very narrowly, and may be resorted to only in exceptional cases and for dominating reasons of justice.' " *Id.* (quoting *Kornfeld v. Kornfeld*, 393 Fed. App'x 575, 577 (10th Cir. Aug. 31, 2010)). Accordingly, the court looks to the American rule.

"Under the American Rule, absent a statute or enforceable contract, a prevailing litigant is ordinarily not entitled to collect reasonable attorney fees from the loser." *Aguinaga v. United Food and Commercial Workers Intern. Union*, 993 F.2d 1480, 1481 (10th Cir. 1993) (internal citation omitted). "However, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. *Id.* (internal quotation marks and citation omitted). Accordingly, courts have recognized a small number of equitable exceptions to the American Rule—i.e., the bad faith exception, the common fund exception, the willful disobedience of a court order

exception, and the common benefit exception. *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59 (1975)).

"The first and perhaps most firmly established exception to the traditional American rule is illustrated by those exceptional cases where the behavior of a litigant has reflected a willful and persistent defiance of the law, or where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." *Gilpin v. Kansas State High Sch. Activities Ass'n, Inc.*, 377 F. Supp. 1233, 1245 (D. Kan. 1973) (internal quotation marks and citations omitted). "The award of attorneys' fees under this exception is punitive in nature and therefore is limited to those cases where a defense is maintained in 'bad faith' without any basis in law or fact and represents 'obdurate obstinacy.' " *Id.*

Under the common fund exception, the successful plaintiff is awarded attorney fees because his suit creates "a common fund, the economic benefit of which is shared by all members of the class." *Hall v. Cole*, 412 U.S. 1, at 5 n. 7 (1973). The common fund exception allows the court to make the beneficiaries of the plaintiff's litigation "contribute to the costs of the suit by an order reimbursing the plaintiff out of the defendant's assets from which the beneficiaries eventually would recover." *Id.*

The common benefit exception to the American rule originates from the common fund exception. This exception permits "reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Electric Auto-Lite*,

3

396 U.S. 375, 393–94 (1970). "The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale." *Id.* at 392. As the case law makes clear, applying this exception inherently requires a relationship between the class of beneficiaries and the defendant such that an award of attorneys' fees against the defendant shifts the costs of litigation to "the class that has benefited from them and that would have had to pay them had [the class members] brought the suit." *See id.* at 397. For example, this relationship exists between a corporation and its shareholders (see *Mills*) and between a union and its members (see *Hall*).

As was stated above, this court has the authority to award fees and expenses under § 2202. However, this case does not meet any of the exceptions to the American rule that justify granting fees to the prevailing plaintiffs. As the plaintiffs recognize, there are only a small number of exceptions to the American Rule, including the bad faith exception and the common fund/common benefit exceptions. *Aguinaga*, 993 F.2d at 1492. The plaintiffs argue for attorneys' fees under the bad faith and common benefit exceptions.

In their reply brief, plaintiffs argue that OXY litigated this issue in bad faith. The plaintiffs' assertion of bad faith relies solely on the fact that OXY sent out letters to all house gas users, leading the plaintiffs to believe their free gas supply might be in jeopardy. Although this act by OXY may have been the catalyst for plaintiffs filing their suit, it is not evidence of bad faith. The court finds no evidence supporting a finding that OXY litigated this issue in bad faith.

4

Plaintiffs also argue that they are entitled to fees under the common benefit exception. But, as the court explained above, cases where courts have applied this exception require a relationship between the defendant and the class members such that an award that will operate to spread the costs proportionately among them. "Fee shifting is justified in these cases, not because of any bad faith of the defendant but, rather, because to allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Hall v. Cole*, 412 U.S. 1, 5–6 (1973). The Tenth Circuit described the exception in *Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995):

> When the common benefit is a fund, fees are extracted from the predetermined damage recovery rather than obtained from the losing party. Thus, when a class action yields a fund for class members, fees may be paid from the recovery. Similarly, in a typical shareholder derivative suit, the successful shareholder plaintiff confers a substantial benefit on all of the shareholders of the defendant corporation. Any fees assessed against the corporation can be spread proportionately among all of the shareholders, who are the real beneficiaries of the litigation, because the corporation is the alter ego of the shareholders.

*Id*. at 1444.

The requisite relationship mentioned and explained above does not exist in this case. Although the result of the litigation confers a substantial benefit on the members of the class, an attorneys' fee award against OXY would not operate to spread the costs proportionately among the class members. The class members receive free gas from OXY; they do not own shares or pay dues to OXY. OXY is not an alter ego of the class members. Granting the plaintiffs requested attorneys' fees would not spread the costs of litigation to the other class members. Rather, it would operate solely as a penalty

against OXY, an extra burden in addition to the declaratory judgment ordered against it. The common benefit exception is inappropriate under these circumstances.

Neither of the exceptions to the American rule argued for by the plaintiffs applies here. Additionally, there is no independent statutory or contractual basis for attorneys' fees under § 2202. Accordingly, the court denies the plaintiffs' motion for attorneys' fees.

The court is aware that this is a seemingly absurd conclusion. This is an exceptional case for myriad reasons, and an award of attorneys' fees would seem to be appropriate for reasons of justice, if only the case fit one of the exceptions to the American rule. The plaintiffs filed their complaint on August 31, 2007, after receiving a letter from OXY that clearly implied that their source of free house gas was in jeopardy. The court granted summary judgment to the plaintiffs on March 26, 2013, and the class certification issue continued to be litigated into this case's seventh year with the court. The case resulted in a great result for the plaintiffs, as they have received a declaratory judgment that OXY is responsible for providing them free, useable house gas for the remainder of their leases. Three hundred members of the plaintiff class currently exercise their right to free useable gas from OXY, and there are approximately 2,000 class members if those who could exercise this right—but currently do not—were included in the calculation. Whether the value of the result of the litigation is measured using actual or potential class members, the result is worth a great deal: rather than losing a source of free energy and being forced to convert their homes to some alternative source, these plaintiffs will continue to have free, useable house gas

provided by OXY, at OXY's expense. At one point OXY placed a value of $30 million on this benefit to the plaintiffs.

OXY points out that the plaintiffs succeeded on only their declaratory judgment claim, losing on their breach of contract, lease forfeiture and injunctive relief claims. But this result stems from the fact that plaintiffs' counsel took proactive legal action. In hindsight, had plaintiffs' counsel waited until the gas became unusable in quality—forcing the class members to convert to alternative energy sources for their homes—damages would be available against OXY for a clear breach of the leases. The plaintiffs' attorneys would have been entitled to a portion of those damages as compensation for their work. The plaintiffs and their counsel surely made the most prudent and efficient choice by filing at the first sign that a breach of contract was on the horizon. Strangely, this route results in the plaintiffs' attorneys having worked for free.

The obvious corollary this court's denial of attorneys' fees here is that any attorney who makes the wise decision to file early in a case such as this—that is, seeking a declaratory judgment before the contract is actually breached—must litigate the case pro bono, with no chance of recovering a portion of damages and no attorneys' fees. This court follows the current state of the law to that bizarre result, but it does so reluctantly.

**B. Nontaxable Expenses**

The parties agree that an award of nontaxable expenses depends on whether the court awards attorneys' fees. As the court awards no attorneys' fees, nontaxable expenses are inappropriate here.

**C. Incentive Fees**

The court also declines to award incentive fees to the named plaintiffs in this case, finding that none of the cases cited by the plaintiffs in support of such an award provides authority for an award in the absence of a common fund.

**Motion for Approval of Second Class Notice**

Finally, the court has before it a pending motion by the plaintiffs seeking approval of class notice. *See* Dkt. 164. OXY responded by arguing that this notice should be delayed until its motion to alter or amend the Judgment and the plaintiffs' motion for attorneys' fees and nontaxable expenses are both decided; this objection is moot as a result of the current order. OXY also objected to the form of notice proposed by the plaintiffs, noting that the parties were able to agree on the first form of notice without the court's involvement. Accordingly, the court gives the parties two weeks to agree on the form of notice currently at issue.

IT IS THEREFORE ORDERED this 31st day of October, 2013, that the court denies plaintiffs' Motion for Attorneys' Fees and Nontaxable Expenses (Dkt. 160).

IT IS ALSO ORDERED that the parties have until November 22 to agree on the form of notice to be issued pursuant to the plaintiffs' Motion for Approval of Second Class Notice (Dkt. 163). The court will take up the Motion after that time if the parties do not reach an agreement.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE